UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| LATRICIA GREENE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 09-2188 |
| ILLINOIS DEPARTMENT OF | ) |
| EMPLOYMENT SECURITY, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Plaintiff Latricia Greene filed an Amended Complaint (#19) against Defendant Illinois Department of Employment Security in March 2010.  Plaintiff alleges that Defendant, her former employer and also the Illinois agency responsible for adjudicating claims of unemployment benefits, denied her claim for benefits in retaliation for her complaints of racial discrimination and harassment perpetrated by Defendant in connection with her employment.  Plaintiff seeks relief under Title VII.  Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In May 2011, Defendant filed Defendant's Motion for Summary Judgment (#33). Plaintiff filed a Response to Motion for Summary Judgment (#35).  Defendant filed Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment (#36).  After reviewing the parties' pleadings, memoranda, and submitted evidence, this Court hereby **GRANTS** Defendant's Motion for Summary Judgment **(#33)**.

### I.  Preliminary Issue

As a preliminary matter, the Court must address whether there are any genuine issues of material fact precluding summary judgment.

The Court begins by noting that Plaintiff has failed to comply with Local Rule 7.1(D)(2), which provides that a party responding to a motion for summary judgment must list by number each fact from the movant's motion for summary judgment which is either conceded to be undisputed and material, disputed and material, disputed and immaterial, or undisputed and immaterial. Most confusingly, in a section titled "Material Issues of Fact Admitted," Plaintiff admits certain facts in numbered paragraphs, but these numbered paragraphs do not correspond to the numbered paragraphs in Plaintiff's motion for summary judgment. Local Rule 7.1(D)(2)(6) states that "a failure to respond to any numbered fact will be deemed an admission of fact."

Perhaps alleviating the significance of the errors in format, the Court also notes that Plaintiff does not appear to contest the substance of Defendant's proposed facts. Plaintiff lists only one "material issue of fact denied," which concerns the date of Plaintiff's discharge. Additionally, Plaintiff makes a nonspecific statement that "the remainder of the facts stated in Defendant's motion under Section II: Undisputed Material Facts are irrelevant and immaterial to this matter." (#35, p. 6). Furthermore, Defendant's proposed undisputed material facts largely recount dates and decisions in the well-documented agency adjudicatory process, in which Defendant considered Plaintiff's claim for unemployment benefits.

Next, Plaintiff has proposed several Additional Material Facts. Defendant disputes Plaintiff's additional material facts at (#35, pp. 6-7, ¶¶ 1, 2, and 5) on the grounds that these proposed additional facts each state a legal conclusion, and are unsupported by evidentiary documentation, in violation of Local Rule 7.1(D)(2)(b)(5). The Court agrees with Defendant's objections. The Court will not consider these proposed additional material facts.

Because Plaintiff failed to comply with Local Rule 7.1(D), and because Plaintiff does not appear to dispute the substance of Defendant's proposed undisputed material facts, this Court deems all of Defendant's undisputed material facts admitted, with the exception of (#33, ¶ 14),

which Plaintiff properly contested.[1]  Furthermore, the Court rejects Plaintiff's proposed additional material facts at (#35, pp. 6-7, ¶¶ 1, 2, and 5).

## II. Background

The following background information is taken from the undisputed facts, as well as evidence submitted to the Court.  For the reasons discussed above, this Court primarily relies on Defendant's undisputed material facts at (#33, pp. 3-9, ¶¶ 1-41), as well as evidence submitted by both parties.

Plaintiff was employed by the Illinois Department of Employment Security from August 1988 through April 2005 as a Program Representative.  (#33, ¶ 1).  She worked in an office in Kankakee, Illinois.  (#33, ¶ 1).  The Local Office Manager of this office at the relevant time was Gloria Richard.  (#33, ¶ 3).  Andrew Nicholos, a Field Office Supervisor, was Plaintiff's direct supervisor.  (#33, ¶5; #33-1, p. 34).

On February 17, 2005, Plaintiff was directed to leave work after it became clear that Plaintiff was unable to perform any of the essential functions of her job, for reasons related to Plaintiff's health.  (#33, ¶ 2; #33-1, p. 141).  Plaintiff testified that she had suffered an injury at work near that period of time.  (#33-1, p. 25).  In a letter from Ms. Richard to Plaintiff dated February 18, 2005, Ms. Richard instructed Plaintiff to either return to work immediately, or if she was unable to work, to submit a CMS-95 form confirming temporary disability.  (#33-1, p. 141).  A CMS-95 form is a form used as a physician's statement providing authorization for disability leave and return to work.  The letter also instructed Plaintiff to communicate with her supervisor on a daily basis until she received approval for a leave of absence.  (#33-1, p. 141).

---

[1]These facts may be found at (#33, pp. 3-9, ¶¶ 1-41).  The sole disputed fact, (#35, ¶ 14), concerns the date of Plaintiff's determination.  Defendant erroneously stated that the date of Plaintiff's discharge was April 30, 2004, when the correct date is actually April 30, 2005.

Plaintiff did not respond to Ms. Richard's letter. Apparently, Plaintiff thought that she only needed to comply with instructions she received from her union representative and from individuals with Defendant's main office in Chicago (hereinafter "the Chicago office"). (#33-1, pp. 34-38). Plaintiff testified that she routinely sought approval for leave through the Chicago office, and that she thought they were handling her worker's compensation claim in this instance. (#33-1, pp. 34-38).

In a letter from Mr. Nicholos to Plaintiff dated March 9, 2005, Mr. Nicholos informed Plaintiff that because she had been absent from work since February 17, and she had not called her supervisor or manager, her absence was considered unauthorized. (#33-1, p. 143). Mr. Nicholos instructed Plaintiff to contact him or Ms. Richard immediately. The letter stated: "If you need to request a disability leave of absence, you must have your physician complete the enclosed CMS-95 form and return it to HRM no later than the close of business, March 16, 2005." (#33-1, p. 143).

On March 18, two days after the deadline indicated in Mr. Nicholos's letter, Plaintiff faxed a CMS-95 form. (#33, ¶ 9; #33-1, pp. 144-47). The time stamp of from the fax is clearly indicated on the exhibit as being sent on March 18, 2005, at 10:34 a.m., with a number for the sender and recipient. (#33-1, pp. 144-47). In addition to being tardy in submitting the form, Plaintiff submitted it to an individual in the Chicago office, and still did not contact her supervisors in the Kankakee office. (#33-1, p. 47).

In a letter dated April 11, 2005, a Labor Relations Manager informed Plaintiff that she was suspended pending a final decision as to whether she would be discharged. The letter referred to a pre-disciplinary hearing held on April 6, 2005, and stated that the grounds for the suspension were job abandonment, unauthorized absence, insubordination, and failure to comply with the office manager's and supervisor's instructions. (#33-1, p. 139). Plaintiff was then discharged on April 30, 2005. For several months, Plaintiff pursued a grievance claim with the union, a process which continued through the rest of 2005. In October 2005, Plaintiff filed a

charge of discrimination with the Illinois Department of Human Rights (hereinafter "IDHR"), alleging harassment and discrimination because of her race. The Court will refer to this claim as "EEOC Claim 1."

In 2006, Plaintiff filed a claim for unemployment insurance benefits. As indicated previously, Defendant is the agency responsible for making determinations about unemployment insurance benefits. On March 14, 2006, Field Office Supervisor Michelle Cross granted Plaintiff's request for benefits, stating that she left work because she was deemed physically unable to perform her work by a doctor, and she notified her employer of the reason for her absence. (#33-6). On March 31, Defendant asked for reconsideration of this determination, as the grounds for Plaintiff's discharge were job abandonment and insubordination. (#33-7, p. 1). In a correction entered on April 10, 2006, Patricia Jones of the Regional Office determined that Plaintiff's unemployment insurance benefits were denied because she was discharged due to job abandonment. (#33-8). Plaintiff's benefits were terminated.

Plaintiff responded to this reversal of the agency determination regarding her benefits in two ways: First, she filed a direct appeal of the determination through the agency, and then eventually in state court. Second, in September 2006, she filed an additional claim with IDHR (hereinafter "EEOC Claim 2"), asserting that Defendant denied her unemployment benefits in retaliation for her filing of EEOC Claim 1. Plaintiff received a right to sue letter from the EEOC with regard to EEOC Claim 2, and EEOC Claim 2 is the basis of this lawsuit.

Regarding Plaintiff's direct appeal, Plaintiff's direct appeal of the agency's determination regarding her unemployment benefits resulted in a hearing before Administrative Law Judge P. Michael Gonzalez, which took place on May 30, 2006. On May 31, ALJ Gonzalez determined that Plaintiff was entitled to benefits. On October 30, 2006, ALJ Gonzalez re-mailed this decision to Attorney Flanagan, the attorney of record on the case, noting that the earlier copy mailed to Attorney Flanagan was incorrectly addressed. Plaintiff notes that this re-mailing is significant because the effect of the re-mailing was to renew Defendant's opportunity to request

leave to submit additional evidence, an opportunity which otherwise would have been foreclosed by this point. After ALJ Gonzalez re-mailed his decision, Attorney Flanagan did request leave to submit additional evidence. In January 2007, the Board of Review granted this request and remanded Plaintiff's benefits claim to a new referee for hearing. In February 2007, ALJ Sharon Devanna determined that Plaintiff was disqualified from unemployment benefits. The Board of Review affirmed this decision in April 2007. Plaintiff appealed the final decision of the Board of Review to the Circuit Court in administrative review, but her claim was dismissed.[2]

### III. Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). A factual dispute is material only if its resolution might affect the outcome of the suit under governing law. *Id*. The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Furthermore, the Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex*, 477 U.S. at 322-23.

### IV. Discussion

The Court will divide its discussion in to two parts. First, the Court will consider the appropriate scope of its review. Second, the Court will assess the merits of Plaintiff's retaliation claim.

---

[2] This procedural summary of Plaintiff's direct appeal is taken from the undisputed facts. (#33, ¶¶ 20-31).

*A. Scope of Review*

Given the circumstances of this case, it is necessary for this Court to clearly define the scope of what it is reviewing and what it is not reviewing, and to consider issues of immunity. The Court has been asked to determine whether a reasonable trier of fact could find, viewing the evidence in a light most favorable to Plaintiff, that Defendant retaliated against Plaintiff by contesting and denying her claim for unemployment insurance benefits. Plaintiff alleges that Defendant retaliated against her in its capacity as her former employer, as well as in its capacity as an adjudicator of her claim. Plaintiff alleges that this retaliation began on April 10, 2006, when Defendant terminated benefits it had previously awarded, and continued until April 2007, when the Board of Review made a final determination that Plaintiff is not entitled to benefits.

The Court will consider whether it must limit the scope of its review of Plaintiff's allegations in three respects. First, the Court notes that it does not have the power to conduct an administrative review of the entirety of the Department of Employment Security's decision-making process, but the Court does have jurisdiction to consider Plaintiff's claim as it relates to retaliation. Second, Defendant argues that the Court should limit its review substantively to Plaintiff's allegations that concern Defendant's conduct in its capacity as her employer. Third, Defendant argues that the Court should limit its review temporally to Plaintiff's allegations only as they relate to Defendant's conduct up to April 10, 2006.

*1. Court's Scope of Review of Administrative Agency Decision-Making*

The Court is not conducting an administrative review of the entirety of the Department of Employment Security's decision-making process. The appropriate venue for such a review would have been Kankakee County Circuit Court. Plaintiff did file a complaint for

administrative review in Kankakee County Circuit Court, but the case was dismissed for want of prosecution.[3]

The Court further notes that, because the Kankakee County Circuit Court did not issue any judgment on this matter, subject matter jurisdiction of this Court is not affected by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine precludes federal courts from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments . . . ." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). However, the "doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency." *Hemmer v. Ind. State Bd. of Animal Health*, 532 F.3d 610, 614 (7th Cir. 2008) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644, fn. 3 (2002)).

On the other hand, based on the principle of res judicata, the agency's fact finding may preclude relitigation of the facts. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)) (holding "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate' . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.")

The Court concludes that it has subject matter jurisdiction over Plaintiff's retaliation claim, but it will not permit Plaintiff to use a Title VII claim against her employer as a vehicle to collaterally attack the agency's adjudication of her claim for benefits.

---

[3]The Court obtained a copy of the docket for this case from the Kankakee County Circuit Court, to verify it did not affect this Court's subject matter jurisdiction. The case was filed as *Greene v. Ill. Dep't of Emp't Servs.*, Case No. 07-MR-232. The complaint was filed on June 6, 2007, and dismissed for want of prosecution on July 2, 2007.

*2. Defendant's Conduct In Its Capacity as an Adjudicator*

Plaintiff seeks to argue that Defendant retaliated in her both in its capacity as her former employer and in its capacity as an adjudicator of her claim for benefits. Plaintiff states:

> The retaliatory conduct, however, resides not only through the Department's decision making capacity of granting or denying unemployment benefits, but also in their role as an employer. The retaliatory conduct came when, while answering the Plaintiff's IDHR/EEOC charges, they sought review of the decision affirming the benefits from May 30th [referring to the decision of ALJ Gonzalez].

(#35, p. 11). Notably, this claim of retaliatory conduct is broader than the conduct alleged in Plaintiff's complaint, in which Plaintiff only alleged that Defendant retaliated against her by "aggressively and maliciously contest[ing] the Plaintiff's unemployment benefits." (#19, pp. 6-7). In its motion for summary judgment, Defendant argues that it is entitled to immunity, as the agency was performing a quasi-judicial function in determining Plaintiff's eligibility for benefits.

In Section 1983 actions, a defendant may enjoy "a qualified immunity when performing administrative or investigatory duties, but an absolute immunity when performing a quasi-judicial role." *Henderson v. Lopez*, 790 F.2d 44, 45 (7th Cir. 1986) (quoting *Coleman v. Frantz*, 754 F.2d 719, 728 n. 9 (7th Cir. 1985)). In determining which type of immunity applies, the court will consider the nature of the function that an official was performing in that particular case. *Henderson*, 790 F.2d at 46. Absolute judicial immunity shields judicial and quasi-judicial actors from liability for civil damages arising out of their judicial functions. *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004). In *Vance v. Watts*, No. 06-cv-1101, 2007 WL 924259 (C.D. Ill. Mar. 27, 2007), the United States District Court for the Central District of Illinois found that an IDES referee, responsible for hearing a plaintiff's appeal of the IDES' decision denying his unemployment benefits, was entitled to quasi-judicial immunity. *See also Butz v. Economou*, 438 U.S. 478, 512-13 (1978) (stating that adjudicators within federal administrative agencies are entitled to judicial immunity).

However, there are two problems with Defendant's request for judicial immunity. First, Defendant, an agency, has invoked a form of immunity normally applicable to individuals.

Though the Court considers the functions performed by individuals seeking immunity, the immunity nevertheless applies to public officials, not to the office employing the official. *See Auriemma v. Montgomery*, 860 F.2d 273, 275 (7th Cir. 1988) (discussing the applicability of the immunity to public officials). Second, though this immunity may be applicable in Section 1983 claims, it is not clear that the immunity may be applied to this kind of Title VII claim.[4] The Court therefore cannot grant judicial immunity to Defendant as such. However, as a practical matter, this Court cannot review the actions of the agency in its adjudicatory capacity. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (granting agency adjudications preclusive effect under res judicata).

Thus, the Court limits its review to whether Defendant retaliated against Plaintiff in its capacity as her employer. The Court will not consider whether Defendant retaliated against Plaintiff in its capacity as an adjudicator of her claim for unemployment insurance benefits. The Court believes this limitation in scope is warranted by the principle of res judicata, as well as its consistency with Plaintiff's complaint.

This limitation, in effect, makes several of Plaintiff's arguments irrelevant. The Court will not consider actions taken or decisions made by Patricia Jones, ALJ Gonzalez, ALJ Devanna, or the Board of Review.[5] All of these individuals were acting in an adjudicatory capacity. If there were procedural errors or constitutional violations in this adjudicatory process, the appropriate remedy would have been direct review of the agency decision in state court. The

---

[4] Defendant cites one case discussing judicial immunity in the context of a Title VII claim. In that case, the United States Supreme Court held that a judge was not entitled to judicial immunity for his decision to terminate a probation officer, where the terminated employee brought a claim against him under Title VII. *Forrester v. White*, 484 U.S. 219, 230 (1988).

[5] For example, Plaintiff argues that ALJ Gonzalez re-mailed a copy of his decision in order to allow Defendant to take advantage of a procedural rule, granting it more time to submit evidence in opposition to Plaintiff's claim for benefits. Plaintiff does not offer any evidence that ALJ Gonzalez had a retaliatory motive in re-mailing the copy of his decision. But, more to the point, ALJ Gonalez's action in this regard is beyond this Court's scope of review.

Court will consider actions taken by Plaintiff's former supervisors and by Attorney Flanagan to oppose Plaintiff's claim for benefits, as these individuals acted on behalf of Defendant in its capacity as Plaintiff's employer.

*3. Defendant's Conduct After April 11, 2006*

Additionally, in the event the Court would not grant summary judgment on all counts, Defendant moves for summary judgment on Count II of Plaintiff's complaint, as well as partial summary judgment with respect to Count I, with respect to claims concerning conduct that occurred after April 11, 2006. Plaintiff's Count I directly concerns the subject matter of Plaintiff's EEOC Claim 2, for which the EEOC provided a right-to-sue letter. Specifically, Count I alleges that Defendant retaliated against Plaintiff for filing EEOC Claim 1. Plaintiff's Count II goes beyond the factual subject matter originally contained in the EEOC complaint, by alleging that Defendant continued to retaliate against Plaintiff for filing EEOC Claim 2. As such, Defendant argues that Plaintiff has failed to exhaust administrative remedies for any of Defendant's conduct that allegedly occurred after April 11, 2006. *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (noting that exhaustion of administrative remedies is a prerequisite to bringing a claim under Title VII).

Defendant argues that claims brought in the district court must be within the scope of the charges filed with the EEOC. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Id*. The complaint filed in the district court and the charge filed with the EEOC must, at a minimum, "describe the same conduct and implicate the same individuals." *Teal v. Potter*, 559 F.3d 687, 692 (7th Cir. 2009). Plaintiff responds that a plaintiff may litigate a Title VII claim in federal court if there is a reasonable relationship between the allegations in the EEOC charge and those in the federal complaint, and the claim in the federal complaint could reasonably be expected to be discovered in the course of the EEOC's investigation. *Teal*, 559 F.3d at 692.

11

As the Seventh Circuit has noted, there are two purposes for the general rule that a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge: the requirement promotes resolution of the dispute by settlement or conciliation, and the requirement ensures sued employers receive adequate notice of the charges against them.  *Teal*, 559 F.3d at 692; *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).  At the same time, courts are mindful that EEOC complaints should be liberally construed, given the fact that laypersons usually initiate the charges.  *Teal*, 559 F.3d at 692; *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985).

The Court reiterates that its review is limited to the actions taken by Defendant in its capacity as Plaintiff's employer.  There is a reasonable relationship between Plaintiff's allegation that Defendant maliciously contested her unemployment benefits in April 2006, and her allegation that Defendant continued to maliciously contest the benefits throughout the agency adjudicatory process.  The Court does not reach the issue of whether Plaintiff's allegations concerning the actions of ALJ Gonzalez, ALJ Devanna, or the Board of Review after April 11, 2006, are within the scope of Plaintiff's EEOC Claim 2.

B.  *Merits of Plaintiff's Retaliation Claim*

A plaintiff seeking to establish a *prima facie* case of retaliation may proceed by either a direct or indirect method of proof.  To survive summary judgment under the direct method, a plaintiff must demonstrate:  (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two.  *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011).  To prove a retaliation claim under the indirect method, a plaintiff must show: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, (3) she was performing her job satisfactorily, and (4) she was treated worse than a similarly situated employee who did not complain of discrimination.  *Hill v. Potter*, 625 F.3d 998, 1001 (7th Cir. 2010).  If a plaintiff establishes a *prima facie* case, the defendant has a burden to show a legitimate, non-discriminatory reason for its actions.  *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir.

2011). If the defendant meets this burden, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a mere pretext. *Id*. *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Plaintiff argues that she has submitted sufficient evidence to resist summary judgment under both the direct method and indirect method of proof. Defendant argues that Plaintiff offers no evidence in support of her claim beyond her own speculation and self-serving testimony. Defendant additionally argues that, even if Plaintiff could establish a *prima facie* case, Defendant has met its burden to demonstrate nondiscriminatory reason for its actions, and Plaintiff has not shown this to be a mere pretext. The essence of Defendant's position is that Plaintiff abandoned her job, and that Defendant's opposition to her receipt of unemployment benefits was both unrelated to Plaintiff's EEOC claim and legitimate.

As such, the Court will consider several different legal questions in one discussion, as they implicate the same facts and evidence. Specifically, this case comes down to whether Plaintiff can show that Defendant's actions in opposing her claim for benefits were not due to her job abandonment, but rather that Defendant's actions were causally related to Plaintiff's EEOC claim. The Court will consider: (1) whether operating under the direct method of proof, Plaintiff can demonstrate that there was a causal connection between her protected conduct and the adverse employment action, (2) whether operating under the indirect method of proof, Plaintiff had performed her job satisfactorily, and (3) whether Defendant's opposition to Plaintiff's unemployment insurance benefits based on her job abandonment was legitimate, or whether this was a mere pretext.

Defendant has offered ample evidence indicating that Plaintiff did, in fact, abandon her job. Shortly after Plaintiff left work for the last time, her supervisor provided her with instructions about maintaining communication that Plaintiff did not follow. (#33-1, p. 141). After being informed that she must call her supervisors immediately and provide a CMS-95 form within one week, or her supervisors would conclude she had abandoned her job, Plaintiff did not

respond in a timely manner. (#33-1, p. 143, #33, ¶ 9; #33-1, pp 144-147). ALJ Devanna and the Board of Review found that Plaintiff had abandoned her job, a determination of fact that has preclusive effect. (#33, ¶¶ 20-31; *see Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)). Plaintiff does not suggest that her termination was motivated by retaliation, and Plaintiff does not dispute that she failed to comply with her supervisor's instructions when she did not return to work for a month.

Plaintiff argues that the evidence and undisputed material facts establish her *prima facie* case of retaliation in two ways. First, Plaintiff argues that certain procedural irregularities in the processing of Plaintiff's claim for benefits are indicative of retaliation. Specifically, Plaintiff notes that ALJ Gonzalez re-mailed of his decision granting Plaintiff benefits on October 30, 2006, which had the effect of giving Defendant a renewed opportunity to submit evidence and appeal. However, this action is beyond this Court's scope of review, for the reasons discussed above.

Second, Plaintiff offers proof that Defendant used information learned from responding to Plaintiff's EEOC complaint to deny Plaintiff's unemployment benefits. (#35, p. 7, ¶¶ 3-4)). Defendant admits that, in preparing a response to an IDHR inquiry initiated by Plaintiff's EEOC complaint, Defendant discovered the CMS-95 form received by Defendant's human resources division in the Chicago office, bearing the fax date stamp of March 18, 2005. (#36, p. 3). After Defendant discovered this CMS-95 form in connection with the IDHR inquiry, it used the CMS-95 form in connection with Plaintiff's unemployment insurance claim to show that Plaintiff did not respond to her supervisor's request to send the form by March 16, and thus she had

abandoned her job. (#33-12, pp 1, 3).[6] Plaintiff states that Defendant's use of evidence in the unemployment insurance claim that Defendant found in connection with the EEOC claim is direct evidence of retaliation.

In considering a motion for summary judgment, the Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, a plaintiff's speculation is not a sufficient defense to a summary judgment motion. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991). On summary judgment, a court may not weigh evidence or determine the credibility of testimony, but this does not require a court to deny summary judgment where no reasonable trier of fact could find in a non-moving party's favor. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Here, Plaintiff asks the Court to find that the Defendant's use of the same evidence in both the IDHR inquiry and the unemployment insurance proceedings could amount to direct evidence of retaliation, drawing all inferences in Plaintiff's favor. Plaintiff offers no legal or factual support for this contention beyond her own speculation, which is not a sufficient defense to summary judgment. No reasonable trier of fact could conclude that Defendant's use of the same evidence to respond to an IDHR inquiry and to oppose Plaintiff's claim for unemployment insurance benefits amounts to evidence of retaliation.

---

[6]In connection with Plaintiff's claim for unemployment insurance benefits, Defendant filed an Appeal to the Board of Review stating:

> On November 8, 2006, while preparing a response in a collateral matter, <u>Latricia Greene v. IDES</u>, IDHR #2007CF0885, medical files were found which contained the March 14, 2005, CMS 95 and the March 17, 2005, CMS 95 that were received by IDES' HR Division, indicating they were received March 18, 2005, @ 10:34 a.m. The two CMS 95s are submitted as additional evidence under 56 Ill. Adm. Code 2720.315(b) to rebut claimant's statements on the record that she faxed them on March 16, 2005, as instructed by IDES in the March 9, 2005 letter. These documents were not part of the claimant's Personnel File or Disciplinary File reviewed in preparation for the hearing before the Referee or the initial response to IDHR # 2007CF0885, and as such not available for the [unemployment insurance] hearing.

(#33-12, p. 1).

15

Thus, Plaintiff has not offered proof of a causal connection between her protected conduct and the adverse employment action to establish a *prima facie* case of retaliation under the direct method. Plaintiff has no proof that she performed her job satisfactorily, a requirement of the *prima facie* case under the indirect method of proof. Plaintiff has no evidence to establish that Defendant's opposition to her claim for unemployment insurance benefits was not legitimately based on her job abandonment. For these reasons, this Court grants Defendant's motion for summary judgment.

### V. Summary

For the reasons discussed above, this Court hereby **GRANTS** Defendant's Motion for Summary Judgment **(#33)**. This case is terminated. The clerk of court is directed to enter judgment in favor of Defendant and against Plaintiff.

ENTER this 6th day of December, 2011.

                                            s/ DAVID G. BERNTHAL
                                            U.S. MAGISTRATE JUDGE